Trustees of Glidden & Curtis v. Warren.

Trustees of Glidden & Curtis, A. D. S. Bell et al. and
The First National Bank of Columbus, Ohio, v.
Walter P. Warren, Marcus A. Thompson,
Evan T. Ellicott and Baltimore
& Ohio Railroad Co.

1.  INTERPLEADER—*Rights of  Creditors.*—November 3, 1887, the Ohio and Western Coal and Iron Company, a corporation existing under the laws of New York, and the firm of Glidden & Curtis, of Boston, Mass., made an assignment by which the firm was to sell, or supervise and con_trol all sales of said company's articles and products, to furnish advances according to its needs to such extent as they should consider themselves safely secure, at current rates of interest and exchange, to render accounts of sales monthly to said corporation, and charge their commis-

sions, etc.  All articles and products of the said corporation were to be consigned to said firm.  The contract was to continue in force for five years, from the thirty-first day of October, 1887.  Afterward Glidden & Curtis became insolvent and made an assignment to A. D. Bell et al.; previous to this the firm had sold, on credit, to the Pullman Company, products of the Coal and Iron Company to the amount of $30,000.  February 8, 1889, the First National Bank of Columbus, Ohio, first learned of the assignment of Glidden & Curtis.  It held notes of the Coal and Iron Company to the amount of $20,000, indorsed by Glidden & Curtis, coming due on the 9th and 11th.  On the next day, the 9th, it procured an order from the Coal and Iron Company, signed by its assistant treasurer, on the Pullman Company, for the payment to its order of the sum of $20,000.  Neither the bank nor the Pullman Company had any notice of the relations existing between Glidden & Curtis and the Coal and Iron Company.  On the 9th day of February, 1889, the Coal and Iron Company at New York made an assignment to James A. Hall of Columbus, Ohio.  The bank, under the order, and the attaching creditors of the Coal and Iron Company, all claimed the money of the Pullman Company, and it filed its bill of interpleader.  *It was held*, that the bank was entitled to be first paid out of the fund.

**Memorandum.**—Bill of interpleader.  Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding.  Heard in this court at the October term, 1892.  Opinion filed February 1, 1893.

### STATEMENT OF THE CASE.

This was a bill of interpleader, filed by the Pullman Company, a debtor of the Ohio and Western Coal and Iron Company, against sundry creditors of the latter company, seeking to reach this debt by attachment proceedings.

On the 8th day of February, 1889, the Ohio and Western Coal and Iron Company was indebted to the First National Bank of Columbus, in the sum of $20,000, on two notes of said company, one for the sum of $10,000, dated January 10, 1889, payable thirty days thereafter to the order of Glidden & Curtis, and one for the sum of $10,000, dated January 12, 1889, payable thirty days thereafter to the order of Glidden &. Curtis; both of which notes had been indorsed by Glidden & Curtis, and delivered to the bank for money loaned to the Coal and Iron Company.

These loans were made mainly upon the credit of the

Trustees of Glidden & Curtis v. Warren.

indorsers, Glidden & Curtis, who were reputed to be wealthy, after the bank had declined to loan on the credit of the Coal and Iron Company alone.

On February 8, 1889, at a late hour, the officers of the bank learned that Glidden & Curtis had made an assignment for the benefit of creditors, and being alarmed about these notes, sent for H. C. Stanwood, the assistant treasurer of the Coal and Iron Company, who resided in Columbus, and had negotiated the loan in question, and was the only officer of the company then in Ohio, and demanded further security from the company. On the next morning, Stanwood gave the bank an order on the Pullman Company, of Chicago, for $20,000, to be paid out of moneys owing and to become due to the Coal and Iron Company on or about the 15th day of February, and the 15th day of March, 1889.

The Pullman Company was at once notified by telegraph, and the draft sent to Chicago for collection, presented, and protested for non-acceptance on the 11th day of February, and again for non-payment on the 15th day of February and 15th day of March.

On February 11, 1889, the deed of assignment of the Coal and Iron Company to James A. Hall, assignee, was delivered to Hall and filed for record in the Probate Court of Franklin County, Ohio. On February 9th, Marcus A. Thompson, a creditor of the company, began suit by attachment in the Circuit Court of Cook County, Illinois, and had his writ served on the Pullman Company as garnishee. This attachment was followed by others at various dates, and on October 5, 1889, the Pullman Company filed its bill of interpleader, admitting its indebtedness to the Coal and Iron Company in the sum of $31,683.63, and bringing in the bank, the Coal and Iron Company and the several attaching creditors to prove their claims to the fund.

To this bill the bank filed its answer on October 28, 1889, setting up the draft in question and the facts relating thereto, insisting that said draft when given, operated as an assignment *pro tanto* of the fund in question, and asking for a decree for payment thereof.

Upon a hearing in the Circuit Court, a decree giving the fund to the attaching creditors was entered and the bank appealed.

APPELLANTS' BRIEF, NORTON, BURLEY & HOWELL, ATTORNEYS FOR FIRST NATIONAL BANK OF COLUMBUS.

The bank contended that a corporation may be bound as readily as an individual, by giving to a person the appearance of authority as agent. The salutary doctrine of estoppel may be invoked against corporations as readily as against individuals, to prevent them from misleading or defrauding the public by setting up the lack of strict and formal authority when charged with the consequences of transactions had in good faith with persons held out and apparently authorized as their agents.

If an act performed by an agent would, under ordinary circumstances, be within the authority delegated to the agent, a person dealing with him in good faith, on the faith of his apparent powers, and without notice of facts showing that the act was unauthorized, may hold the principal liable, whether the act was authorized or not. Morawetz on Corporations, Vol. 2, Sec. 597; McDonald v. Chisholm, 131 Ill. 273; St. Louis, A. & C. R. R. Co. v. Dalby, 19 Ill. 353; Ætna Ins. Co. v. McGuire, 51 Ill. 342; Union Mut. L. Ins. Co. v. White, 106 Ill. 67; Morawetz on Corporations, Sec. 637, *et seq.*, and 593; Bank of U. S. v. Dandridge, 12 Wheat. 70; Merchant's Bank v. State Bank, 10 Wall. 604; Taylor v. Agricultural & M. Ass'n, 68 Ala. 229; Minor v. Bank of Alexandria, 1 Peters, 46–70; Patter v. Schlor, 30 Barb. 218; Tippetts v. Walker, 4 Mass. 597; Savings Bank v. Davis, 8 Conn. 191; Bank of Metropolis v. Guttschlick, 14 Pet. 19; Bank of Middlebury v. Rutland & Co., 30 Vt. 159; Bank of Attica v. Pottier & Stymus Co., 1 N. Y. Sup. 483.

But the act, even though it were not originally authorized, or at once confirmed by estoppel, was ratified by the corporation. It was promptly brought to the knowledge of its officers, and although directors' meetings were held thereafter, not only was no action taken to rescind it, but the

officers, so far as the evidence indicates, approved the act; and neither the corporation nor its assignee, though parties to this suit, has sought to defeat the payment.

If the corporation had the right to disaffirm the act, it should have done so promptly; and failing in this, it must be held to have ratified it. Ragland v. McFall, 137 Ill. 81; Rolling Mill v. St. Louis, etc., R. R., 120 U. S. 259; Ry. Cos. v. Keokuk Bridge Co., 131 U. S. 381; Fitzgerald Cons. Co. v. Fitzgerald, 137 U. S. 109; Walworth Bk. v. Farmers, etc., Co., 16 Wis. 629; Perkins v. Boothby, 71 Me. 91; 1 Beach on Private Corporations, Sec. 195; Sec. 197, note 7.

The order or draft in question operated as an equitable assignment *pro tanto* of the fund in the hands of the Pullman Company, from the time of its delivery. Notice to the drawee was not necessary to perfect the title of the bank as against said party to this cause. Pomeroy v. Manhattan L. Ins. Co., 40 Ill. 398; Nat. Bk. of America v. Ind. Bkg. Co., 114 Ill. 484; Phillips v. Edsall, 127 Ill. 547; 3 Pomeroy's Eq. Jur., Secs. 1280–1, and notes.

The fact that the debt against which the draft was drawn was not then due and payable, is immaterial, as courts of equity will give effect to an assignment of a fund to become due.. 3 Pomeroy's Eq. Jur., Sec. 1283 and cases cited; Anderson v. DeSoer, 6 Grat. 364; 2 Story's Eq. Jur. (13th Ed.) Sec. 1044; 1 Daniel on Neg. Inst. (3d Ed.) Sec. 23.

The transaction was not avoided by the insolvency of the corporation. Under the common law a corporation, though insolvent, may deal with its creditors by making payments, etc., even to the extent of preferring creditors at will. Paulding v. Chrome Steel Co., 94 N. Y. 340; Dutcher v. Imp. and Traders' Bank, 59 N. Y. 5–12; 2 Morawetz on Corp'ns, Sec. 804.

While the existence of the right of a failing debtor to prefer one creditor to another in the distribution of his property has often been regretted, it is recognized, both in courts of law and of equity. Cases may be cited upholding the right of a corporation, unrestricted by statute, to make a preferential assignment. The rule is quite firmly established. Waite on Insolv. Corp'ns, Sec. 162.

A creditor has unquestionably the right to pursue his legal remedies against his debtor, so long as he does so in good faith, and if he thus succeeds in obtaining priority, either by suit or by the voluntary act of his debtor, he is entitled to hold the advantage gained, even though the result may be to postpone or even defeat other creditors. Weber v. Mick, 131 Ill. 526.

The validity and enforceability of a contract by a foreign corporation are determined, not by its charter, but by the law prevailing where the contract is made. Cook on Stock, etc., and Corp. Law, 2d Ed., Sec. 694 and note; or, as held in Illinois, by the law of the place of performance. Nat. Bank of America v. Ind. Bkg. Co., 114 Ill. 493; Morawetz on Priv. Corpns., Secs. 967–8; Waterman on Corpns., 541, 547; Hoyt v. Thompson, 19 N. Y. 207; Milnor v. N. Y. & N. H. Ry. Co., 53 N. Y. 367; Rorer on Inter-state Law, 4; Wharton on Conf. of Laws, Secs. 104, 348–51; Mead v. Dayton, 28 Conn. 33.

APPELLEES' BRIEF, E. R. JEWETT, FOR BALTIMORE & OHIO RAILROAD CO.; WARREN & COX AND SMITH, FLOWER & MUSGRAVE, FOR WALTER P. WARREN.

It was contended as to the claim of the National Bank of Columbus that the order was drawn by H. C. Stanwood, who assigned as assistant treasurer, but who had no authority whatever to draw such a draft. Stokes v. N. J. Pottery Co., 46 N. J. Law, 237; Koch v. Bldg. Assn., 35 Ill. App. 465; Adams v. Cross, etc., Co., 27 Ill. App. 313; Morawetz on Cor., Sec. 585, et seq.; Taylor on Cor., Sec. 236; Reed v. Buffum, 79 Cal. 77; Titus v. R. R. Co., 8 Vroom, 98, 102; Leggett v. N. J. Banking Co., Saxt. (N. J.) 541; Stow v. Wyse, 7 Conn. 214; Hyde v. Larkin, 33 Mo. App. 365; Walworth Co. Bk. v. Farmers, etc., Co., 14 Wis. 325; R. R. Co. v. James, 22 Wis. 194; Hoyt v. Thompson, 5 N. Y. 320; Hoyt v. Thompson, 19 N. Y. 207; Victoria, etc., Co., v. Fraser (Colo.), 29 Pac. Rep. 667; Davis v. Investment Co., (Va.), 15 S. E. Rep. 547.

The order was a partial assignment of a particular fund

to become due to the drawer, and is not good unless accepted. Such an assignment is good only when the person who is to pay raises no objection. Mandeville v. Welch, 5 Wheat. 278; Chapman v. Shattuck, 3 Gil. 49; Crosby v. Loop, 13 Ill. 625; same case, 14 Ill. 330; R. R. Co. v. Nichols, 57 Ill. 464.

The order or draft was void under the New York statute, because it was given in contemplation of the insolvency of the Ohio & Western Coal and Iron Company. Rev. Stat. of N. Y. 1827–1828, Sec. 4, title IV, Chap. 18; Robinson v. Bank of Attica, 21 N. Y. 406; Brouwer, Rec'r, v. Harbeck, 5 Selden, 589; Bowen v. Lease, 5 Hill (N. Y.) 221; Harris v. Thompson, 15 Barb. 62; Sibell v. Remsen, 33 N. Y. 95; Paulding v. Chrome Co., 94 N. Y. 334; Pierce v. Crompton, 13 R. I. 312; Waite on Insolvent Corporations, Sec. 328; Starkweather v. Am. Bible Soc., 72 Ill. 50; Female Academy v. Sullivan, 116 Ill. 385; Metropolitan Bank v. Godfrey, 23 Ill. 579 and note; Brighton v. White (Ind.), 27 N. E. Rep. 620; Ewing v. Toledo Bk., 43 Ohio St. 31.

The order or draft was invalid under the common law, as declared by the decisions in the State of Ohio, because it was a preference given by an insolvent corporation, which had ceased doing business. Rouse v. Merchants Bk., 46 Ohio St. 493; Waite on Insolvent Cor., Secs. 162 and 654; Morawetz on Cor., Sec. 803; Kankakee Woolen Mills v. Kampe, 38 Mo. App. 229.

It was contended that Glidden & Curtis, as sales agents, never had such possession of the property, out of which this fund arises, as to acquire a lien thereon. Winne v. Hammond, 37 Ill. 99; Strahorn v. Union Stock Yards Co., 43 Ill. 427; Mechem on Agency, Sec. 676, et seq.; Union Trust Co. v. Trumbull, 137 Ill. 146, 27 N. E. Rep. 28.

Glidden & Curtis acquired no right to a lien on this fund by virtue of the contract of November 3, 1887. Boomer v. Cunningham, 22 Ill. 320; Hunt v. Bullock, 23 Ill. 320; Allen v. Montgomery, 48 Miss. 101; Strong v. Krebs, 63 Miss. 338; Hoffmans v. Brungs, 83 Ky. 400; City Fire Ins. Co. v. Olmsted, 33 Conn. 476; Clay v. East, etc., R. R. Co., 62 Tenn. 421; Reed v. Mosely, 87 Tenn. 759; Chynoweth v.

Tenney, 10 Wis. 403; Moody v. Wright, 13 Met. 17; Stearns v. Quincy, etc., Ins. Co., 124 Mass. 63; Chase v. Denny, 130 Mass. 566; Fogg v. Dowling, Stephen's Digest of New Brunswick Decisions, 530; Fielding v. Muttlebaugh, 1 Western Law Monthly, 218; Christmas v. Russell, 14 Wall. 69; Ford v. Garner, 15 Ind. 298; Rogers v. Hosacks, 18 Wend. 318; Holt v. Bank, 13 Ga. 341; Bromwell v. Turner, 37 Ill. App. 561.

The contract of November 3, 1887, was not a valid contract, because procured by Glidden for the benefit of his firm, when the company was insolvent, and he the president thereof. Beach v. Miller, 130 Ill. 170; Atwater v. Am. Exch. Nat. Bk., 40 Ill. App. 501; 1 Beach on Private Corporations, Sec. 241 B.

The contract of November 3, 1887, was never legally ratified. 1 Beach on Private Corporations, 74; 1 Morawetz on Private Corporations, Sec. 511; Union Gold Mining Co. v. Bank, 2 Colo. 265; Union, etc., Ins. Co. v. Keyser, 32 N. H. 313; Dana v. Bank, 5 W. & S. 223, 245–7; Dayton, etc., R. R. Co. v. Hatch, 1 Disney, 84; Charleston, etc., Co. v. Dunsmore, 60 N. H. 85; Tracy v. Guthrie Co., 47 Ia. 27; Commonwealth v. St. Mary's Church, 6 S. & R. 508; State v. Bank, 6 La. 746–63.

The contract of November 3, 1887, was *ultra vires* the corporation. Banks & Bro. Revised Statutes of N. Y., 8th Ed., Vol. 3, Sec. 2; Vail v. Hamilton, 20 Hun, 355; Fridley v. Bowen, 87 Ill. 151; Penn v. Bornman, 102 Ill. 523; Savings Bk. v. Averell, 96 N. Y. 473; Denike v. N. Y. & R. E. Line, etc., 80 N. Y. 599.

Opinion of the Court, Gary, P. J.

The appellants, Bell and his associates, are trustees under a deed of assignment of the firm of Glidden & Curtis of Boston. Another appellant is the First National Bank of Columbus, Ohio. The appellees are all attaching creditors of the Ohio & Western Coal & Iron Company, and the fund in controversy, over $30,000, is in the Circuit Court, in a suit commenced by a bill of interpleader filed by the Pullman Palace Car Company.

November 3, 1887, the Coal & Iron Company and the firm of Glidden & Curtis executed an agreement containing these clauses :

" First.   The said firm are to sell or supervise and control all sales of said corporation's articles and products, and they are to furnish advances on said corporation's products according to its needs to such extent as they shall consider themselves safely secured therefor at current rates of interest and exchange, and they are to render accounts of sales monthly to said corporation, and charge their commissions at the rate of ten (10) cents per ton on the sales of the coal, and two and one-half (2½) per cent on sales of iron.

Second.   All articles and products of the said corporation are to be and are hereby consigned to said firm.

Third.   This contract is to continue in force for five (5) years from the thirty-first day of October, 1887."

Acting under this agreement the amount now due to Glidden & Curtis from the Coal & Iron Company, greatly exceeds the fund in court.

One Walter C. Wyman was the Chicago agent of Glidden & Curtis, and under his authority, in fact as such, but without notice thereof to, made a contract with the Pullman Company in the name of the Coal & Iron Company, under which the coal, the price of which is the fund in court, was delivered.

February 8, 1889, the bank held two notes of $10,000 each, made by the Coal & Iron Company, and indorsed by Glidden & Curtis, becoming due (without grace) on the 9th and 11th of that month.   On that 8th day of February the bank learned that Glidden & Curtis had that day made an assignment, and the next morning obtained from the Coal & Iron Company an order as follows :

"COLUMBUS, OHIO, February 8, 1889.
To The Pullman Palace Car Company, Pullman, Ill.

Please pay to the First National Bank of Columbus, Ohio, or order, the sum of twenty thousand dollars of the money owing by you and to become due to us on or about the 15th

day of February, and the 15th day of March, 1889; value received by us, and charge the same to our account.

THE OHIO & WESTERN COAL & IRON CO.,
By H. C. Stanwood, Ass't Treasurer."

Neither the bank nor the Pullman Company had any notice of the relations between the Coal & Iron Company and Glidden & Curtis. Upon these facts, which we assume, and do not attempt to prove by collating the evidence, and which will not be conceded to be the facts by any party but the bank, we hold—without undertaking to prove—the law to be, that the bank is entitled to be first paid from the fund in court, the amount remaining unpaid upon the order, which is $16,676.79 after deducting moneys received from other sources, and the residue thereof, after deducting costs and expenses properly chargeable thereon, belongs to Bell and his associates, the trustees.

The decree of the Circuit Court giving it to the attaching creditors is therefore reversed and the cause remanded with directions that the distribution be thus made:

First. Pay to the First National Bank of Columbus, Ohio, the sum of $16,676.79, with interest at five per cent per annum from March 1, 1889.

Second. Pay the net residue to the appellants, Bell, Stowe and Morrison. And that the Circuit Court award to the said appellants respectively their costs against the said attaching creditors, appellees here. Reversed and remanded.